[No. 59606-3-I.   Division One.   December 17, 2007.]

ANTHONY JACKSON ET AL., *Appellants*, v. FENIX UNDERGROUND, INC., ET AL., *Respondents*.

*David J. Balint*, for appellants.

*Earl M. Sutherland* (of *Reed McClure*), for respondents.

¶1 BECKER, J. — When parties to a tort suit settle their dispute in a written agreement providing for a specified rate of interest, and the court enters judgment to enforce their settlement agreement, then for purposes of RCW 4.56.110 the judgment is founded on a written contract rather than on tortious conduct. It bears interest at the rate specified in the agreement.

¶2 A fight took place outside a nightclub in Seattle's Pioneer Square at 3:30 in the morning on April 2, 2005. A security guard for Fenix Underground pushed appellant Anthony Jackson to the ground. As a result of the fall, Jackson sustained injury to his knees. Jackson brought a lawsuit against the guard and Fenix Underground, alleging tortious conduct. At the time of the incident, Fenix Underground had an insurance policy with Scottsdale Insurance Company.

¶3 Jackson, Fenix, and Scottsdale participated in a mediation on September 5, 2006. Jackson took the position that there was coverage available under the policy for bodily injury up to the limit of $1,000,000. Scottsdale took the position that the maximum amount of coverage available was the $50,000 sublimit for liability arising from assault and battery and declined to offer more than that amount.[1] Fenix and Jackson agreed to settle the case without Scottsdale's approval by entry of a covenant judgment, contingent upon a judicial finding of reasonableness.

¶4 Fenix admitted liability and agreed to entry of a judgment for $275,000, with interest to accrue at 12 percent:

> That the amount of the judgment to be entered against the defendants, jointly and severally, is in the principal amount of $275,000, which judgment shall carry interest at the rate of 12% per annum until fully paid.[2]

Fenix agreed to assign Jackson all rights against Scottsdale, including a possible bad faith action. In return, Jackson covenanted not to execute on the judgment against Fenix, except for the rights against Scottsdale.

¶5 In this situation, the defendant's insurer can ultimately be held liable only for the amount of the settlement that is reasonable and paid in good faith. *See Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 509-10, 803 P.2d 1339

---

[1] Report of Proceedings (Dec. 14, 2006) at 19-20.

[2] Clerk's Papers at 116 (Settlement Agreement (Nov. 16, 2006)).

(1991). A reasonableness hearing was held in superior court on December 14, 2006, with Scottsdale participating as an intervenor. The court approved the settlement agreement as reasonable:

> I guess I'm not sure that I would say that it's a settlement of what they could get on the best day. It may be somewhat toward the high end. But on the best day, it seems to me he could get substantially more if the jury finds that he has significant permanent injuries.[3]

The court then entered the agreed judgment against Fenix "in the principal amount of $275,000 which judgment shall carry interest at the rate of 12% per annum until fully paid."[4]

¶6 One week after the judgment was entered, Scottsdale filed a motion for reconsideration or relief from judgment, asserting that the judgment was subject to the interest rate provided in RCW 4.56.110(3) for judgments "founded on the tortious conduct of individuals." Judgments governed by this statute bear interest at a rate that fluctuates on a monthly basis depending upon the rate for treasury bills. For purposes of this case, that rate is 7.180 percent. Scottsdale argued the judgment should be "corrected" to bear interest at the lower rate. Scottsdale did not question the court's determination that the settlement itself was reasonable. Scottsdale's attorney merely claimed that he had failed to notice that the judgment "incorrectly" provided for interest at 12 percent. Jackson responded that the judgment correctly reflected the interest rate specified in the settlement contract, as dictated by RCW 4.56.110(1) for judgments "founded on written contracts."

¶7 The court granted Scottsdale's motion for reconsideration and reduced the interest rate accordingly:

> The court finds that the order entered on December 14, 2006 contained a mistake in the judgment summary and in its

---

[3] Report of Proceedings (Dec. 14, 2006) at 17.

[4] Clerk's Papers at 255 (Order on Mot. for Determination of Reasonableness).

provisions in that it was contrary to the law of the state of Washington set forth in RCW 4.56.110(3); and that the judgment herein should bear interest at the rate of 7.180% per annum from December 14, 2006.[5]

¶8 Jackson appeals and asks this court to reinstate the agreed 12 percent per annum interest rate.

■■ ¶9 The relevant statute provides as follows:

Interest on judgments shall accrue as follows:

(1) Judgments *founded on written contracts*, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in the contracts: PROVIDED, That said interest rate is set forth in the judgment.

. . . .

(3) Judgments *founded on the tortious conduct of individuals* or other entities, whether acting in their personal or representative capacities, shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the date of entry. . . .

RCW 4.56.110 (emphasis added). Issues of statutory interpretation and claimed errors of law are reviewed de novo. *Meadow Valley Owners Ass'n v. Meadow Valley, LLC*, 137 Wn. App. 810, 816, 156 P.3d 240 (2007).

■■ ¶10 The court looks to the language first to determine the meaning of a statute and gives effect to the plain language if the statute is not ambiguous. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). When interpreting a statute, the court should read it in its entirety and each provision must be harmonized with other provisions, if at all possible; statutes "must be construed so that all the language is given effect and no portion is

---

[5] Clerk's Papers at 268 (Order on Scottsdale's Mot. for Recons. or Relief from J. (Jan. 30, 2007)).

rendered meaningless or superfluous." *Kilian v. Atkinson,* 147 Wn.2d 16, 21, 50 P.3d 638 (2002). Courts avoid reading statutes in ways that will lead to absurd or strained results. *Wright v. Jeckle,* 158 Wn.2d 375, 379-80, 144 P.3d 301 (2006).

▆▆ ¶11 In light of these principles, Scottsdale's interpretation of the judgment here as being founded upon tortious conduct might make sense if the fixed interest rate specified in subsection (3) were the only statutory provision for interest on judgments. But in reading the entire statute, subsection (1) must also be taken into consideration. Subsection (1) plainly manifests a legislative intent to allow contracting parties the freedom to specify a different interest rate. There is no dispute that settlement agreements are contracts. *Evans & Son, Inc. v. City of Yakima,* 136 Wn. App. 471, 477, 149 P.3d 691 (2006). Once parties have agreed to settle a tort claim, the foundation for the judgment is their written contract, not the underlying allegations of tortious conduct.

¶12 Scottsdale argues, however, that even if judgments founded on tort claim settlements are governed by subsection (1), an exception should be carved out for covenant judgments entered after a reasonableness hearing has been held under RCW 4.22.060. That statute provides for a hearing on the issue of the reasonableness of the "amount to be paid." RCW 4.22.060(1). Scottsdale contends that the "amount to be paid" in this case was $275,000 because the arguments at the hearing revolved around whether this principal sum was reasonable in light of the evidence of liability and damages, not whether the interest rate was reasonable. But it would be a strained interpretation of RCW 4.22.060 to hold that the "amount to be paid" includes only the principal amount of the settlement, and not the interest to be paid on the outstanding balance. Both principal and interest are components of the settlement. A plaintiff may be willing to accept a smaller principal amount if the interest rate on the outstanding balance is higher, and vice versa.

¶13 RCW 4.56.110(1) provides contracting parties with the freedom to choose varying interest rates depending on their individual circumstances. Because the interest is part of the "amount to be paid" on a contract implementing a settlement of a tort suit, the court does not have authority to adjust the specified interest rate once the court has determined that the amount to be paid is reasonable. The fact that the parties may have focused their arguments at the hearing exclusively on the reasonableness of the principal amount does not alter this conclusion. Scottsdale's motion for reconsideration was in reality a collateral attack on the reasonableness determination, which is not before us for review because Scottsdale has not appealed it.

¶14 The order granting Scottsdale's motion for reconsideration is reversed. The judgment is remanded for reinstatement of the interest rate of 12 percent.

SCHINDLER, A.C.J., and AGID, J., concur.

Reconsideration denied January 31, 2008.